# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID R. PANZIER, II, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 03-cv-0876-MJR |
| | ) |
| THE DIAL CORPORATION and | ) |
| LOCAL 618, INTERNATIONAL | ) |
| BROTHERHOOD OF TEAMSTERS, | ) |
| CHAUFFEURS, WAREHOUSEMEN AND | ) |
| HELPERS OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

Now before the Court is Defendant The Dial Corporation's (hereinafter "Dial") motion for summary judgment (Doc. 25) and memorandum in support (Doc. 26) and Defendant Local 618, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America's (hereinafter "Local 618") motion for summary judgment (Doc. 27) and memorandum in support (Doc. 28) as to Plaintiff David R. Panzier, II's two-count second amended complaint under Section 301 of the Labor Management Relations Act, **29 U.S.C. 185** (Doc. 18). In Count One, Panzier alleges Dial breached its collective bargaining agreement with Local 618 when it discharged Panzier without proper cause. In Count Two, Panzier alleges Local 618 breached its duty to fairly represent Panzier when it allegedly acquiesced or unreasonably permitted Dial to terminate Panzier's employment without just or proper cause and then failed to take his case to arbitration without any good faith basis.

1

Panzier responded jointly to the motions for summary judgment at Doc. 29. Dial replied at Doc. 31 and Local 618 replied at Doc. 30. This matter being fully briefed, the Court begins its analysis with a brief recitation of the factual background and procedural history.

### **Factual Background and Procedural History**

Dial operates a plant in St. Louis, Missouri where it manufactures dry detergent, liquid detergent and related products during three daily shifts. Panzier began working for Dial on September 26, 1988, and was employed by Dial for approximately 15 years until his employment was terminated on May 15, 2003, retroactively effective May 9, 2003. At the time of his termination, Panzier worked as a Technician III Line Leader directing a crew of employees.

Local 618 is the labor union that represents the bargaining unit employees employed by Dial at its St. Louis plant. The bargaining unit employees's employment, which included Panzier, is governed by a collective bargaining agreement (hereinafter "CBA") negotiated by Dial and Local 618. Article 20 of the CBA, the "Management Rights" clause, provides in part:

> All management functions, rights, powers and authority which the Company has not specifically and clearly limited or abridged by this Agreement are recognized by the Union as being retained solely and exclusively by the Company, including, but not limited to, and by way of example only: ... the direction of the working forces including but not limited to the right to hire, promote, transfer, suspend, demote, discipline or discharge for proper cause ....

Doc. 26, Exh. E. Article 7 of the CBA sets forth the three steps of the grievance procedure. The first step provides that the employee should discuss his grievance to his supervisor. Step two provides that in the event a satisfactory conclusion cannot be reached in the first step, the employee should provide a written grievance to his supervisor. Within five days of Dial's receipt of the written grievance, a meeting will be held between the employee and a member of the grievance

committee or a Local 618 representative and a representative of Dial, and Dial will render its decision in writing within five working days after the meeting. The last step, step three, provides that in the event a satisfactory conclusion is not reached in step two, Local 618 may appeal the second step answer to Dial within ten calendar days and a meeting would then be held within thirty calendar days from the date of the third step appeal to resolve the grievance. Dial then will respond to Local 618 in writing of its decision within fourteen calendar days. Thereafter, if a satisfactory settlement still has not been reached, the grievance may be referred to arbitration by Local 618 if it gives Dial written notice of its intent to do so within thirty calendar days from its answer in step three.

As well, Dial has "Plant and Distribution Center Rules" (hereinafter "Plant Rules") that apply to the bargaining unit employees. In Article 27 of the CBA, Dial and Local 618 agreed that Dial could implement such rules concerning certain standards of conduct and what constitutes proper cause for termination of employment.

The Plant Rules separate infractions into three categories of increasing severity: general, major and serious. The Plant Rules provide that an employee's accumulation of two written notices for general or major infractions in a twelve-month period will result in suspension, while accumulation of three warning notices in a twelve-month period for general or major infractions "will result in permanent separation" of that employee. Specifically, the Plant Rules state:

> Infractions of these rules will be dealt with by using the written warning notice concept, starting with the first written warning notice. Letters of reprimand and written warning notices can be issued concurrently, depending upon the seriousness of the infractions.
>
> Warning notices are cumulative, regardless of the nature of the infraction, and will remain in effect for twelve months. Letters of reprimand remain in effect for two years. A second written warning

3

> notice will result in a disciplinary suspension. Should an employee's conduct warrant the issuance of a third written warning, as a progression on the first and second notices, the employee will be permanently separated from employment.

Doc. 28, Exh. HH.

During his employment with Dial, Panzier was involved in a couple of infractions. On August 8, 2002. Panzier was counseled for violating Plant Rule II-T (morally or socially unacceptable behavior) on July 7, 2002. On July 7, 2002, in response to a manager's request to obtain a product sample, Panzier apparently became angry and threw his cup from which he was drinking, shouted at management, and started slamming drawers and lab equipment. In that counseling, Dial specifically informed Panzier that further inappropriate conduct would subject him to further discipline up to and including termination.

Panzier was also counseled on August 8, 2002 for violating Plant Rule II-U (failure to report or being late for scheduled or assigned overtime without proper substantiation) on August 3 and 4, 2002 when Panzier failed to report for overtime. Panzier was written up, and Panzier and Local 618 grieved the write up as Panzier claimed he was attending to a relative in the hospital. After the fact, Panzier provided a doctor's note indicating that his brother-in-law had been hospitalized. Employee Relations Manager Patricia Canada voided the counseling and explained to Panzier what would constitute proper documentation to prevent the issue of a counseling or discipline for violating Plant Rule II-U in the future.

Thereafter, Panzier accumulated three warning notices within a twelve-month period that resulted in his employment being terminated in accordance with the CBA and Plant Rules. Panzier received the first written warning on October 3, 2002 for violating Plant Rule II-R (a major rule prohibiting smoking, eating or chewing snuff or tobacco). Panzier was found smoking a

4

cigarette in the control room on September 23, 2002. Panzier and Local 618 filed a grievance over the discipline, which Dial denied. Local 610 pursued the grievance through the third step, however it did not arbitrate the grievance as Panzier did not ask that it be arbitrated.

The next written warning was about a month later on November 8, 2002, when Panzier received a written warning for violating Plant Rule II-D (a major rule concerning changing clothes before punching out at the end of the shift without authorization). Panzier reported late that day for mandatory anti-harassment training. Panzier clocked out and went to shower and change his clothes before attending the meeting. Panzier responded that he did not know of the meeting. Panzier and Local 618 filed a grievance over the discipline and pursued the grievance to the third step, but Dial ultimately denied the grievance. Local 618 did not arbitrate the grievance as Panzier failed to notify Local 618 within thirty days after the third step meeting to express interest in pursuing the grievance to arbitration. Panzier did not protest Dial's denial of the grievance or otherwise protest Local 618's decision not to arbitrate the grievance.

The third written warning occurred several months later as a result of three incidents. On April 24, 2003, Panzier was scheduled to report to work for overtime at 4:00 a.m. and did not report until 5:35 a.m. The next day, April 25, 2003, Panzier was again scheduled to work for overtime at 4:00 a.m. and did not report until 7:11 a.m. Dial determined that each instance was a violation of Plant Rule II-U (a major rule for being late for scheduled overtime without proper substantiation). However, Panzier states he had car trouble on both days. On April 24, he states his car's battery died. Then on April 25, his car's serpentine belt snapped and he had to wait for his wife to return home so he could use her car. Panzier took the car in for repair on May 4, 2003, at the end of his work week.

5

Then on May 6, 2003, Panzier left the plant without being relieved of duty and without the approval of his manager. Dial employees are not allowed to end their shift until their relief has reported for work or until otherwise authorized. That day, five minutes prior to the end of his shift, Panzier asked his supervisor, Tim Jensen, if his relief, Angel Jennings, had reported for duty, and was told she had not. Later, Panzier thought he heard Jennings' voice while he was in the restroom. After exiting the restroom, Panzier asked Jensen if Jennings had called out and Jensen said she had not. Panzier then told Jensen he was leaving, and Jensen said that was fine. However, Panzier's replacement did not arrive until 5:02 p.m. that day, instead of 4:00 p.m., and did not call off work. Dial took the events of April 24, April 25 and May 6 and included them all in a third warning.

Then on May 7 and 9, 2003, Dial, Panzier and Local 618 met to discuss the April 24, 2003, April 25, 2003 and May 6, 2003 incidents. During the May 7, 2002 meeting, Panzier claimed the tardiness on April 24 and 25 were the result of car problems. On May 5, 2003, Panzier had submitted receipts for a car battery and an engine belt. However, Dial rejected the receipts as proper documentation as the receipts were not dated for the date on which Panzier missed work. Panzier alleges it was impossible for him to get his car serviced that day as he was working from 5:35 a.m. until 4:00 p.m. on April 24, and was scheduled to be back at work at 4:00 a.m. on April 25. Additionally, Panzier and his wife were in bankruptcy and under financial stress and Panzier states he need to wait until he received his paycheck the following Thursday to repair his vehicles, which he did that next Saturday. Nonetheless, Dial chose to terminate Panzier.

Then on May 14, 2003, Panzier, through the Local 618, grieved his suspension and Chief Shop Steward, Cindy Keys, signed the grievance. On May 15, 2003, Panzier was formally

6

discharged, and Panzier grieved his discharge through Local 618. Again, Keys signed the grievance. On May 22, 2003, Local 618 and Dial conducted a combined second and third step grievance meeting pursuant to Article 7 of the CBA regarding Panzier's termination grievance. At the meeting were Panzier, Marvin Kropp, Business Representative and Recording Secretary for Local 618, Keys, Canada, and Mary Hoffman, Human Resources Manager of Dial.

On May 29, 2003, Dial informed Local 618 that Panzier's termination grievance was denied. In accord with Article 7, Section 4 of the CBA, Local 618 had thirty days from Dial's May 29, 2003 denial of Panzier's grievances to notify Dial of its intent to arbitrate. Local 618 decided not to proceed to arbitration on Panzier's termination grievance and informed Panzier of its decision in a letter dated June 30, 2003. As Local 618 did not notify Dial of its intent to arbitrate, Dial considered this matter closed on June 28, 2003, once the thirty days had passed.

On July 15, 2003, Panzier and his wife, Patty Panzier, faxed a letter to Kropp requesting that Local 618 arrange another meeting with Dial regarding Panzier's termination. Panzier and his wife asserted that Panzier has an alcohol problem and did so at the time of his termination, which Kropp failed to raise during the May 22 meeting. After receiving the facsimile, Kropp sent a letter on July 17 to Tom Delaney, Dial's Director of Human Resources, requesting an additional meeting regarding Panzier's discharge. Kropp then sent a letter to Panzier advising that an additional meeting had been requested, but alerted Panzier that Dial was not required to agree to meet with them. Kropp further explained that if Panzier had an alcohol problem, he could have used Dial's Employee Assistance Program prior to his termination.

On July 21, 2003, Panzier's wife also faxed a handwritten letter to Delaney, who provided a copy to Hoffman. On July 25, 2003, Dial sent a written response to Local 618, stating

7

Dial did not want to meet as Local 618 had been made of aware of Dial's decision to terminate Panzier's employment and choose not to arbitrate the matter, thus Dial considered the matter closed. Kropp informed Panzier by letter of Dial's decision not to meet.

Panzier then filed an unfair labor practice charge against Local 618 with Region 14 of the National Labor Relations Board (hereinafter "NLRB") on July 22, 2003. Panzier alleged that Local 618 violated the National Labor Relations Act for refusing to arbitrate Panzier's discharge grievance and for allegedly perfunctorily processing his discharge grievance. On September 10, 2003, Field Attorney John P. Hasman of Region 14 of the NLRB informed Panzier that he was recommending that his unfair labor practice charge against Local 618 be dismissed, and it was dismissed on September 11, 2003. Panzier appealed the decision and the appeal was denied on January 14, 2004.

Panzier filed his original complaint against Defendants on December 29, 2003 (Doc. 1), amending his complaint on February 4, 2004 (Doc. 2), and later filing a second amended two-count complaint on July 22, 2004 (Doc. 18). In Count One of the second amended complaint, Panzier alleges Dial breached its collective bargaining agreement with the Union when it allegedly discharged Panzier without proper cause. In Count Two, Panzier alleges Local 618 breached its duty to fairly represent Panzier when it allegedly acquiesced or unreasonably permitted Dial to terminate his employment without just or proper cause and then failed to take his case to arbitration without any good faith basis.

**Standard Governing Summary Judgment**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits reveal that there is no genuine issue as to any material fact *and* that the

moving party is entitled to judgment as a matter of law. ***Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 698 (7th Cir. 2002).** The Court is to view the record "in the light most favorable to the non-moving party." ***Dyrek v. Garvey,* 334 F.3d 590 (7th Cir 2003),** *citing* **FEDERAL RULE OF CIVIL PROCEDURE 56(c).**

The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. ***Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986);** *Salvadori v. Franklin School District,* **293 F.3d 989, 996 (7th Cir. 2002).** Rather, to successfully oppose summary judgment, the nonmovant must present definite, competent evidence in rebuttal. ***Salvadori,* 293 F.3d at 996,** *citing Vukadinovich***, 278 F.3d at 699.**

## Analysis

Panzier has filed a hybrid section 301/fair representation suit claiming that Dial breached the collective bargaining agreement and that Local 618 breached the duty of fair representation it owes to its members. *See **Reed v. United Transp. Union*, 488 U.S. 319, 328 (1989);** *McLeod v. Arrow Marine Transp., Inc.***, 258 F.3d 608, 612-13 (7th Cir. 2001).** In order for a plaintiff to prevail in such an action, he must have a meritorious claim against both the union and the employer; the claims are interlocking in the sense that neither is viable if the other fails. ***Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997).** The Court will address Local 618 and Dial's arguments in turn.

**1. Whether Local 618 breached its duty of fair representation to Panzier.**

A union breaches the duty of fair representation only if its actions are arbitrary, discriminatory, or in bad faith. ***Vaca v. Sipes*, 386 U.S. 171, 190 (1967).** Each of these possibilities must be considered separately in determining whether or not a breach has been established. *See*

9

*Ooley v. Schwitzer Div., Household Mfg. Inc.*, **961 F.2d 1293, 1302 (7th Cir. 1992)**, *citing Air Line Pilots Ass'n, Int'l v. O'Neill*, **499 U.S. 65 (1991);** *see also, e.g., Crider*, **130 F.3d at 1243.**

To be "arbitrary", a union's conduct toward its members must be "so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Air Line Pilots Ass'n*, **499 U.S. at 78.** The United States Supreme Court has emphasized that the arbitrary prong of the analysis is very deferential and has held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Ass'n*, **499 U.S. at 67.** Applying this standard, a court "will not substitute [its] judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *McKelvin*, **124 F.3d at 867.** This wide range of deference is warranted because Congress did not intend for courts to interfere with the decisions of the employee's chosen bargaining representative. *Id.* Therefore, "so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless, the decision cannot be regarded as arbitrary." *Id.* **at 867-68.**

In this case, a rational jury simply could not find that the Union failed this test, as there is no evidence of any conduct that even approaches being outside a "wide range of reasonableness." Kropp, who has been employed with Local 618 for twenty years, stated that the decision was made not to arbitrate Panzier's claim as Local 618 did not think they could win the arbitration. *See* Doc. 28, Exh. 3, p. 18. Kropp stated that when deciding whether to arbitrate, he initially looked at all the facts surrounding Panzier's claim, and discussed them with his boss, John Guerra, the secretary/treasurer of Local 618. The two discussed Panzier's claims for a couple of hours over a couple of days. Both agreed that they did not believe they would win if they arbitrated

Panzier's grievance as he fell into the progressive discipline and Panzier had received three write-ups within a twelve-month period. Panzier himself admits that he had received three write-ups within a twelve-month period, subjecting him to termination. Such deliberation by Kropp and Guerra about whether or not to arbitrate Panzier's claim and the resulting decision not to arbitrate Panzier's claim as he had three write-ups on his record within a twelve-month period, is not so far outside a wide range of reasonableness so as to find that Local 618 acted arbitrarily.

In support of his argument that Local 618 acted arbitrarily, Panzier states that a reasonable arbitrator would have overturned the November 8, 2002 write up because Panzier did not change his clothes before punching out, he only changed clothes after punching out. However, Local 618 would not be able to attack the merits of the November 8, 2002 write-up as the time to do so had already passed. As well, Panzier himself never asked that Local 618 arbitrate that grievance when he had the option to do so. As a result, that write-up constitutes one strike against him in the progressive discipline system.

Panzier further argues that Local 618's decision not to arbitrate Plaintiff's termination was arbitrary because it arbitrated other cases that Panzier contends were more egregious than Panzier's purported misconduct. However, the Court notes that Panzier cites to no caselaw in support of this argument. How a union treats other grievances is relevant only as to substantively similar grievances. ***Konen v. Int'l Brotherhood of Teamsters, Local 200*, 255 F.3d 402, 407 (7th Cir. 2001).** Therefore, if Local 618 treats grievances that are substantively similar to Panzier's grievance, differently, than that would be relevant to this Court's analysis as to whether Local 618 acted arbitrarily.

Panzier puts forth the arbitrations of Robert Watson, Brant Boyd, James Silas, and

Corky Luedman. However, the record is devoid of any evidence that these other grievances were substantively similar to Panzier's grievance. Watson, Luedman and Silas were all terminated for one time events, not progressive events like Panzier. And while Boyd was discharged for accumulating three warning notices within a twelve-month period, Boyd's grievance was taken to arbitration as Local 618 was challenging whether Boyd had actually received three warning notices in a twelve-month period. *See* Doc. 28, Exh. 4. Boyd's first warning notice used in his twelve-month calculation was issued on June 26, 2000 for an attendance violation. Boyd then entered into a "last chance" agreement for his attendance problems on February 2, 2001. He later received warning notices on April 9, 2001 and on May 23, 2001. Local 618 contended that on May 23, 2001, Boyd should have only been at the second warning stage with a three-day disciplinary suspension as the date Boyd entered into the last chance agreement should not have been counted against Boyd, but the date of the warning itself – in that matter, June 26, 2000 – is what counts. This is unlike Panzier's situation as he admits to getting three warning notices in a twelve-month period.

As to whether Local 618's conduct was discriminatory and in bad faith, while the two must be analyzed separately, the analyses look to the subjective motivation of the Union officials. ***Trnka v. Local Union No. 688, UAW*, 30 F.3d 60, 63 (7th Cir. 1994).** There needs to be proof that the union acted (or failed to act) due to an improper motive. ***E.g., Crider*, 130 F.3d at 1243; *Trnka*, 30 F.3d at 63; *Ooley*, 961 F.2d at 1304.**

Panzier first argues that Local 618 acted in bad faith in choosing not to arbitrate his grievance because Panzier was affiliated with and participated in a "team concept" program known as the OE program that Local 618 allegedly did not like. The only information the Court can glean from the record regarding the OE program is that it was a program designed to get union and Dial

12

management employees to work together. Doc. 26, Exh. B, p. 169-70. Apparently the program was implemented in phases sometime in 2001 to 2002, but was not in effect in 2003.

The record is completely devoid of any evidence of Local 618's bad faith towards Panzier because of his involvement with the OE program. Moreover, the record before the Court contains barely any information regarding the program. For instance, the Court is unaware of when the program started and ended, the exact periods of time Panzier was involved in the program, Panzier's role in the program, or even how the program worked. The only evidence Panzier puts forth regarding the OE program is Kropp's deposition testimony that Local 618 did not like the program as it "pitted a lot of members against each other." Doc. 28, Exh. 3, p. 29-30. However, Kropp further testified that he was not sure whether Panzier was involved in the program, only that he "was probably like a group of people out there that was either on it/off it at different times." *Id.* This evidence is far short of demonstrating bad faith or that Local 618's conduct was discriminatory towards Panzier. In fact, Panzier himself testified that OE program was not even in existence when he was discharged. Doc. 28, Exh. the NLRB found that Panzier's conduct with OE "was remote in time to [Panzier's] discharge and there was no evidence of any animus towards [Panzier] because of [his] involvement." Doc. 30, p. 4.

Further, Panzier again argues that the ease any arbitrator would have in overturning his November 8, 2002 write-up and Local 618's unwillingness to arbitrate his grievance demonstrates Local 618's bad faith. However, this does not in anyway infer a bad motive on the part of Local 618, especially considering that Panzier himself did not ask Local 618 to arbitrate that specific write-up when he had the chance.

Panzier also argues again that Local 618's decision to arbitrate other grievances that

13

were more egregious than Panzier's purported misconduct is evidence of Local 618's discrimination and bad faith towards Panzier. Yet as stated previously, the record is devoid of any evidence that these other grievances were substantively similar to Panzier's grievance so as to be relevant evidence of discrimination or bad faith.

Moreover, the Court notes that Local 618 always pursued all the grievances filed by Panzier through the system. As to Panzier's discharge grievance, Chief Shop Steward Cynthia Keys filed the grievance protesting Panzier's discharge. Then Local 618 and Dial conducted a combined second and third step grievance meeting regarding Panzier's discharge grievance pursuant to Article 7 of the CBA. Panzier was present at the meeting and represented by Kropp and Keys. Panzier was given the opportunity to present evidence, and Panzier himself has stated that at the meeting he "stressed that [he] had been a valuable employee for 15 years, had done a lot for the company including safety inspections and run orientation meetings for new employees [and that] Marvin Kropp also made these points to the company representatives in an attempt to reduce my discipline to a suspension." Doc. 28, p. 9.

As well, Local 618 was successful in a past grievance of Panzier's. In October 2002, Local 618 pursued Panzier's grievance regarding his warning notice for being absent in August 2002, and Dial withdrew the written warning. As the United States Court of Appeals for the Seventh Circuit has stated, "the union's willingness to pursue [plaintiffs] meritorious claim tends to show that it bore no ill will toward him [when it dropped his meritless claim]." ***Souter v. Int'l Union*, 993 F.2d 595, 599 (7th Cir. 1993).** Further, the Court notes that Local 618 continued to represent Panzier even after notifying him that they were not arbitrating his discharge grievance. Panzier and his wife sent a letter to Kropp on July 15 demanding that Kropp request an additional meeting about

the discharge grievance with Dial to raise the issue of Panzier's newly alleged alcohol problem. While Kropp was not required under the CBA to request the meeting, Kropp complied and requested an additional meeting with Dial. As well, Kropp informed Panzier that an additional meeting had been requested. As a result, the record before the Court does not show that there is any evidence that Local 618 acted discriminatory or in bad faith towards Panzier.

Therefore, the Court finds that Local 618 has not breached its duty of fair representation. Local 618's actions were not arbitrary, discriminatory or in bad faith. *See Vaca*, **368 U.S. at 171.** As a result, the Court grants summary judgment in favor of Local 618 as to Count Two of Panzier's second amended complaint.

**2. Whether Dial breached the collective bargaining agreement.**

As the Court found above that Local 618 has not breached its duty of fair representation and Panzier's claim against Local 618 is not viable, in turn, neither is Panzier's claim against Dial. As stated previously, in order for a plaintiff to prevail in such an action, he must have a meritorious claim against both the union and the employer; the claims are interlocking in the sense that neither is viable if the other fails. *Crider*, **130 F.3d at 1241.** Therefore, the Court grants summary judgment in favor of Dial and against Panzier as to Count One of Panzier's second amended complaint.

**3. Whether the statute of limitation has run as to Panzier's claims.**

The Court notes that Dial asserted in its motion for summary judgment that Dial and Local 618 are entitled to summary judgment because Panzier failed to commence this action within six months of Local 618's decision not to arbitrate Dial's final decision on Panzier's grievance.

While Dial is correct in that there is a six month statute of limitation as to Panzier's claims, the Court finds that Panzier's claims are not barred by the applicable statute of limitation.

In *DelCostello v. Int'l Brotherhood of Teamsters*, **462 U.S. 151, 155 (1983)**, the Supreme Court held that an employee's "hybrid" suit against an employer for breach of a collective bargaining agreement and a union for breach of its duty of fair representation was subject to the six-month statute of limitations found in § 10(b) of the National Labor Relations Act, **29 U.S.C. § 160(b)**. The statute of limitations begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Christiansen v. APV Crepaco, Inc.*, **178 F.3d 910, 914 (7th Cir. 1999),** *citing Metz v. Tootsie Roll Industries, Inc.*, **715 F.2d 299, 304 (7th Cir. 1983).** "Application of this general rule turns on the context in which the claim arose." *Pulliam v. United Auto Workers*, **354 F.Supp.2d 868, 872 (W.D. Wis. 2005).**

In the case at bar, the clock on Panzier's claims began to run from the time he discovered, or reasonably should have discovered, that Local 618 would not take further action on his grievance. *Chapple v. Nat'l Starch & Chemical Co.*, **178 F.3d 501, 505 (7th Cir. 1999).** The determination of the accrual date involves an objective inquiry; plaintiff's asserted actual knowledge is not determinative if he did not act reasonably and "in effect, closed [his] eyes to evident and objective facts concerning accrual of [his] right to sue." *Noble v. Chrysler Motors Corp.*, **32 F.3d 997, 1000 (6th Cir. 1994).**

Defendants assert that Panzier's CBA states that Local 618 had thirty days from Dial's answer to Step 3 of the grievance system to notify Dial of its intent to arbitrate. Therefore, Dial asserts that the six month statute of limitation ran from June 28, 2003, thirty days after Dial's

May 29, 2003 denial of Panzier's grievance. The Court disagrees.

The record before the Court reveals that Local 618 sent a letter to Panzier dated June 30, 2003, in which they informed Panzier of its decision not to arbitrate his claim. While Panzier should have been aware that Local 618 had until June 28, 2003 in which to notify Dial of its intent to arbitrate, it is not unreasonable for Panzier to wait a couple of days after the June 28th deadline passed to learn of the decision, considering Local 618 may be sending him a letter at the end of the deadline, which it in fact did. There is nothing in the record before the Court that reveals that Panzier learned or should have learned of Local 618's decision not to arbitrate his claims any earlier than June 30, 2003. *Cf. Pulliam v. United Auto Workers*, **354 F.Supp.2d 868, 872 (W.D. Wis. 2005);** *Konen v. Int'l Brotherhood of Teamsters*, **255 F.3d 402 (7th Cir 2001).** Therefore, the Court finds that Panzier's claims began to run no earlier than June 30, 2003. And as Panzier filed this suit on December 29, 2003, it is timely.

## Conclusion

The Court **GRANTS** Defendant The Dial Corporation's motion for summary judgment (Doc. 25) and **GRANTS** Defendant Local 618, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America's motion for summary judgment (Doc. 27).

Accordingly, the Court **DIRECTS** the Clerk of the Court to enter summary judgment in favor of Defendants The Dial Corporation and Local 618, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and against David R. Panzier, II. This case is now **CLOSED**.

      **IT IS SO ORDERED.**

      **DATED this 2nd day of June, 2005.**

                                              **s/ Michael J. Reagan**
                                              **MICHAEL J. REAGAN**
                                              **United States District Judge**